## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02107-NYW

DAVID J. MARTIN,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

---

## ORDER ON MOTION TO DISMISS

---

Magistrate Judge Nina Y. Wang

     This matter is before the court on Defendant's Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) (the "Motion" or "Motion to Dismiss") [Doc. 24]. This court considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order Referring Case to Magistrate Judge dated November 5, 2021. [Doc. 18].[1] Upon review of the Motion, the related briefing, and the applicable case law, the Motion to Dismiss is respectfully **DENIED**.

## BACKGROUND

     The court draws the following facts from the Prisoner Complaint (the "Complaint"). [Doc. 1]. Plaintiff David J. Martin ("Plaintiff" or "Mr. Martin") is in the custody of the Federal Bureau of Prisons ("BOP") and is currently housed at the Federal Correctional Institution in Terre Haute,

---

[1] This case was originally drawn and referred to the Honorable Kathleen M. Tafoya. *See* [Doc. 7; Doc. 8; Doc. 18]. Upon Judge Tafoya's retirement, the case was re-assigned to the undersigned Magistrate Judge. [Doc. 27].

Indiana.  [*Id.* at 2].[2]  At all times relevant to this matter, Mr. Martin was housed at the United States

Penitentiary in Florence, Colorado ("USP Florence").  [*Id.* at ¶ 5].  Mr. Martin alleges that on June

2, 2018, he entered the recreation yard at USP Florence to wait for his cousin, [*id.* at 11; *id.* at ¶ 9],

whom Mr. Martin states he had testified against in a hearing "during a trial involving Murder."

[*Id.* at ¶ 10].  While Mr. Martin sat on the bleachers and waited for his cousin to arrive, his cousin

snuck up on him and began pushing and kicking him.  [*Id.* at ¶¶ 12, 16].  This prompted Mr. Martin

to kick at his cousin's hand in an attempt to defend himself.  [*Id.* at ¶ 18].  The cousin then began

to stab Mr. Martin with a six- or seven-inch metal blade.  [*Id.* at ¶¶ 17-18].  Mr. Martin's cousin

stabbed Mr. Martin over 19 times, creating "a total of 9 [puncture] wounds to multiple parts of

[Plaintiff's] body."  [*Id.* at ¶¶ 18-19].

According to Plaintiff, the attack occurred in an area that "staff in the Guard Tower" and

"the Lieutenants Office," "[w]here the Defendant[s'] Offices are," could observe.  [*Id.* at ¶ 16].

Moreover, Plaintiff alleges that before entering the recreation yard, inmates must pass through

several security check points, including "metal scanners".  [*Id.* at 4, 11].  Mr. Martin states that

even staples can set off the metal scanners, [*id.* at 11], and asserts that the metal in the blade "would

have set off the metal detector, and would have alerted the observant Officer [whose] duty [it] was

to observe the metal detector."  [*Id.* at ¶ 14].  Mr. Martin states that this unnamed correctional

officer was either not present at the metal detector or was present and permitted the blade to enter

the yard.  [*Id.*].

Mr. Martin asserts that a number of USP Florence officials were negligent in the events

leading up to the stabbing.  Specifically, he asserts that the USP Florence Complex Warden, John

---

[2] In most instances, the factual allegations in the Complaint are presented in numbered paragraphs.
Where the factual allegation is not presented in a numbered paragraph, the court cites to the page
number on which the allegation is located.

Oliver ("Warden Oliver") was negligent in training correctional officers, knowingly permitted his staff "to refuse to do their job assignments," and "allowed and permitted inmates knowingly to freely carry [weapons], in and about the institution." [*Id.* at ¶ 7a]. He asserts the same or similar general allegations against Stephen Julian, the Complex Warden Associate ("Associate Warden Julian"), the Special Investigations Services Officer, Debra Payne ("Officer Payne"), and Operations Lieutenant Daniel Armendarez ("Lieutenant Armendarez"). [*Id.* at ¶¶ 7b, 7e, 7f].[3] Mr. Martin asserts that the "Federal Officers, Specifically the Special Investigation Lieutenant . . ., as well as the Complex Warden, and the Associate Warden of Security and the complex Captain," were aware that Mr. Martin had testified at a hearing against his cousin. [*Id.* at ¶ 10]. He states that he and his cousin "were known in [the Central Inmate Monitoring ("CIM") system] and other Court documents not to be on [the] 'same' yard together." [*Id.* at 4]. In addition, Plaintiff asserts that USP Florence staff knew or should have known of the danger presented to Mr. Martin by his cousin and consciously or recklessly disregarded that risk, but he does not specifically explain how they did so. [*Id.* at ¶ 11].

Proceeding pro se, Plaintiff initiated this civil action on August 3, 2021. *See generally* [*id.*]. Mr. Martin raises a single negligence claim under the Federal Tort Claims Act ("FTCA"), which appears to be based on three distinct categories of allegations: (1) the government's alleged failure to separate Plaintiff and his cousin at USP Florence; (2) the government's alleged failure to prevent Plaintiff's cousin from bringing a blade into the recreation yard; and (3) the government's alleged failure to intervene in the recreation yard attack. *See* [*id.* at 4]. In the caption of the Complaint, Mr. Martin names only the United States as a Defendant, *see* [*id.* at 1], and lists

---

[3] Mr. Martin also mentions the USP Operations Lieutenant, David Rhodes ("Lieutenant Rhodes"), who he alleges was charged "with the operations and security" of USP Florence, but does not allege any action or inaction on the part of Lieutenant Rhodes. *See* [Doc. 1 at ¶ 7d].

"NONE" on the portion of the form Complaint asking for additional named defendants. *See* [*id.* at 3]. However, Plaintiff then purports to name individual defendants in this matter, as well. *See* [*id.* at 9-11, 15]. Upon an initial review of the case, the Honorable Gordon P. Gallagher determined that the case was not appropriate for summary dismissal. *See* [Doc. 7]. The case was originally re-assigned to the Honorable William J. Martínez and referred to the Honorable Kathleen M. Tafoya, but was then referred to Judge Tafoya for all purposes upon the Parties' consent to the jurisdiction of a Magistrate Judge. [Doc. 8; Doc. 18]. Upon Judge Tafoya's retirement, the case was re-assigned to the undersigned Magistrate Judge. [Doc. 27].

On January 13, 2022, the United States filed the instant Motion to Dismiss, arguing that Plaintiff's FTCA claim should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 24]. Plaintiff responded in opposition to the Motion on March 21, 2022, [Doc. 30], and the United States replied on April 11, 2022. [Doc. 42]. On April 29, 2022, this court entered a Minute Order advising the Parties that the court was considering converting the portion of the Motion to Dismiss that raises an argument under Rule 12(b)(1) to a motion for summary judgment under Rule 56. *See* [Doc. 48 at 2]. Accordingly, the court advised Plaintiff that should he intend to submit any additional evidence in support of his claim—in particular, evidence demonstrating whether there was an order mandating the separation of Plaintiff and his cousin while housed at USP Florence prior to June 2, 2018—he was required to do so no later than May 27, 2022. [*Id.*]. In addition, the court informed the Parties that it intended to consider Plaintiff's "[Sworn] Declaration of David J. Martin, The Plaintiff" (the "First Declaration"), which was filed after Plaintiff filed his Response, *see* [Doc. 39], and permitted Defendant to file a supplemental reply addressing the assertions in that First Declaration. [Doc. 48 at 2]. Plaintiff submitted a "Supplemental [Sworn] Declaration and Reply of David J. Martin

to This Courts [sic] Order April 29, 2022" (the "Second Declaration") on May 26, 2022. [Doc. 51]. That same day, the United States filed a Surreply to its Motion to Dismiss. [Doc. 50]. The briefing is thus complete, and I consider the Parties' submissions below.

## LEGAL STANDARDS

### I.      Rule 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). The party invoking federal jurisdiction has the burden of establishing said jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The Tenth Circuit has explained that

> [m]otions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriquez Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotation omitted)). However, when "the jurisdictional question is intertwined with the merits of the case, the [motion to dismiss] should be construed as a motion for summary judgment, not a Rule 12(b)(1) motion to

dismiss for lack of subject matter jurisdiction." *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1176 (10th Cir. 2008).

## II.    Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nevertheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that even pro se litigants cannot rely on conclusory, unsubstantiated allegations to survive a 12(b)(6) motion).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible").  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.    Pro Se Pleadings

In applying the above principles, this court is mindful that Mr. Martin proceeds pro se and the court thus affords his papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519,

520-21 (1972).  But the court cannot and does not act as his advocate, *Hall*, 935 F.2d at 1110, and applies the same procedural rules and substantive law to Plaintiff as to a represented party.  *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012).

## ANALYSIS

Defendant seeks dismissal of Plaintiff's FTCA claim on two separate bases.  First, it contends that insofar as the FTCA claim is based on allegations that Defendant negligently failed to separate Plaintiff from his cousin, the claim should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction; specifically, Defendant asserts that because the separation of BOP inmates involves the exercise of discretion, Plaintiff's claim is barred under the "discretionary function" exception to the FTCA.  [Doc. 24 at 4].  In addition, Defendant argues that insofar as Plaintiff's claim is based allegations that Defendant negligently permitted a blade to enter the recreation yard or failed to protect him from his cousin's attack, Plaintiff fails to state a claim upon which relief can be granted under Rule 12(b)(6).  [*Id.* at 11].  The court first ascertains the appropriately named Defendant in this case before turning to the merits of the Parties' arguments.

## I.    The Proper Defendant

As a preliminary matter, the court must first ascertain the named Defendant(s) in this action.  As set forth above, Mr. Martin names only the United States in the caption of the Complaint, *see* [Doc. 1 at 1], and he concedes that the United States is "the proper [Defendant]" in this matter.  [*Id.* at ¶ 6].  But Mr. Martin then goes on to name five individuals he alleges were negligent in permitting the events giving rise to this civil case.  [*Id.* at ¶¶ 7a-7f].

For several reasons, the court construes the Complaint as naming only the United States as a Defendant in this matter.  First, the FTCA provides that an action against the United States is the

exclusive remedy "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment," 28 U.S.C. § 2679(b)(1), and thus, "[t]he United States is the only proper defendant in an FTCA action." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n. 4 (10th Cir. 2001). Indeed, "[u]nder the exclusive remedies provision, a plaintiff generally cannot sue an employee where the FTCA would allow him to sue the United States instead." *Simmons v. Himmelreich*, 578 U.S. 621, 627-28 (2016); *see also id.* at n.4 (identifying "an exception to this provision for suits alleging constitutional violations" under 28 U.S.C. § 2679(b)(2)(A)). Had Mr. Martin asserted claims against individual defendants pursuant to the FTCA, such claims would arguably be subject to dismissal. *See Smith*, 561 F.3d at 1099 ("[T]he district court correctly dismissed Smith's FTCA claims against every defendant except the United States on the ground that those defendants were not proper parties.").

Second, Mr. Martin names only the United States in the case caption. [Doc. 1 at 1]. The Federal Rules provide that "[t]he title of the complaint must name <u>all the parties</u>." Fed. R. Civ. P. 10(a) (emphasis added). In referencing on the Complaint's caption, the court is mindful that the Tenth Circuit has instructed that "in a pro se case when . . . the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are." *Trackwell v. U.S. Gov't*, 472 F.3d 1242, 1244 (10th Cir. 2007). But here, the identity of the sole Defendant—the United States—is not unclear from the caption. *See* [Doc. 1 at 1]. Moreover, Mr. Martin states in the body of the Complaint that "[t]his is a Civil Action . . . to Redress the Defendant United States Of America," [*id.* at ¶ 1], states that the United States is the "proper" Defendant, [*id.* at ¶ 6], and suggests that the named individuals would be considered defendants in this case only if "this Court for whatever reason should dismiss any party." [*Id.* at

¶ 7]. Accordingly, the Complaint makes clear Mr. Martin's intent to sue only the United States at this juncture.

Third, there are no *specific* factual allegations in the Complaint directed at any of the referenced individual parties. *See generally* [*id.*]; *see also Mahan v. Huber*, No. 09-cv-00098-PAB-BNB, 2010 WL 749807, at *4 (D. Colo. Mar. 2, 2010) (concluding that a party was not a properly named defendant where aside from being listed under a section title "PARTIES," his "name [did] not appear anywhere else in the Complaint, and there are no allegations directed at him"). And finally, Defendant states in its Motion to Dismiss that it has interpreted the Complaint "to assert a claim <u>only</u> against the United States and <u>not against any individual defendants</u>," [Doc. 24 at 1 n.1 (emphasis added)], and in his Response, Mr. Martin does not contest the United States' interpretation and continues to name only the United States as a Defendant in the case caption. *See* [Doc. 30 at 1]. For all of these reasons, the court construes Mr. Martin's Complaint as only naming the United States as a Defendant in this matter.

Mr. Martin, however, appears to argue that if his claim against the United States is barred, he may sue individual federal employees pursuant to *Simmons v. Himmelreich*. *See* [Doc. 1 at ¶ 7]. Specifically, he states:

> if this Court for whatever reason should dismiss any party, [whose] action is clear, and Individually after filing this matter is left available, again pursuant to any 'exceptions' found in 28 [U.S.C. 2680],[4] or other [similar] [statutes], then the action and holdings apply [that are] found in Supreme Court case . . . *Simmons v. Himmelreich*, [578 U.S. 621 (2016)], Shall take effect and under the Constitutional Torts, shall remain. In this matter the following are requested in their 'Individual

---

[4] Mr. Martin cites to § 2765, which does not exist in Title 28 of the United States Code. *See* [Doc. 1 at ¶ 7]. This citation could be construed as a reference to 28 U.S.C. § 2675, which sets forth an administrative exhaustion requirement for FTCA claims. *See* 28 U.S.C. § 2675(a). However, based on the context of Mr. Martin's argument and his citation to *Simmons*, the court believes that he may intend to cite to 28 U.S.C. § 2680, which sets forth exceptions to the FTCA. *See* 28 U.S.C. § 2680.

Capacities' and [if] the names are not available, moves this Court for limited Discovery, to correctly identify the needed Defendants(s), as follows:

[*Id.*].  In *Simmons*, the Supreme Court held that the FTCA's judgment bar—which provides that "[t]he judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim," *see* 28 U.S.C. § 2676—does not apply to actions that are dismissed because they fall within an exception to the FTCA.  *See Simmons*, 578 U.S. at 624.[5]

The court construes Plaintiff's statement as a suggestion that if this court concludes that the United States cannot be held liable under the FTCA based on some statutory exception, he may automatically proceed against the referenced individual federal employees in their individual capacities.  *See* [Doc. 1 at ¶ 7].  But the court has concluded that only the United States is a named Defendant in this action, and Mr. Martin has cited no authority—and the court could locate no authority—suggesting that a plaintiff may name defendants in the alternative, which would plainly contravene Rule 10(a) of the Federal Rules.  Instead, the proper way for Mr. Martin to add any defendants to this action, if he so chooses, is to file a motion to amend his Complaint.  *See Gilbert v. Steed*, No. CIV.A. 07-3213-CM, 2008 WL 4826142, at *3 (D. Kan. Nov. 6, 2008) ("At this stage of the proceedings, plaintiff is limited to the claims that he alleges in his complaint.  If he

---

[5] Specifically, the Supreme Court first noted that "[t]he FTCA's provisions are contained in two areas of the United States Code": 28 U.S.C. § 1346(b), which "gives federal district courts exclusive jurisdiction over tort claims against the United States for the acts of its employees," and 28 U.S.C. §§ 2671 through 2680—also known as Chapter 171 of Title 28—which include procedural provisions governing FTCA claims.  *Simmons*, 578 U.S. at 625.  Section 2680 sets out exceptions to the FTCA, stating that "[t]he provisions of this chapter and section 1346(b) of this title shall not apply to" certain categories of claims.  28 U.S.C. § 2680(a).  The Supreme Court in *Simmons* concluded that if a claim falls within an exception set out in § 2680, then based on the plain language of the statute, "[t]he provisions of this chapter"—i.e., Chapter 171, including the judgment bar contained in § 2676—would not apply to that claim.  *Simmons*, 578 U.S. at 626-27.

seeks to add the claims identified above or additional defendants, the proper avenue is through a motion to amend.").[6]  Accordingly, the court proceeds in reviewing the Motion to Dismiss in light of the finding that the United States is the sole Defendant in this matter.

## II.    Subject Matter Jurisdiction

First, the United States argues that the court lacks jurisdiction over Plaintiff's claim—only insofar as Mr. Martin's claim is based on the alleged failure to separate Plaintiff from his cousin—based on the discretionary function exception to the FTCA.  [Doc. 24 at 4].  Generally, the United States is immune from suit pursuant to the doctrine of sovereign immunity, which precludes federal jurisdiction over claims against the United States.  *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  But "[t]hrough 28 U.S.C. § 1346(b)(1), the FTCA waives sovereign immunity for certain state law tort claims against the United States." *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017).  Relevant here, the FTCA operates to waive sovereign immunity "with respect to certain injuries caused by government employees acting within the scope of their employment." *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997).

However, the FTCA excepts from its limited waiver of immunity any claims based on the performance of "a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  "The discretionary function exception is designed to protect policymaking by the executive and legislative branches of government from judicial 'second-guessing.'" *Garcia v. U.S. Air Force*,

---

[6] This court does not pass on whether Mr. Martin could raise such claims against any individual defendants in this action under the FTCA.  *See Simmons*, 578 U.S. at 627-29 (discussing the interplay between the *Simmons* holding and the FTCA's "exclusive remedy" provision).

533 F.3d 1170, 1176 (10th Cir. 2008).  "If the discretionary function exception applies to the challenged conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit."  *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995).  "Because the discretionary function exception is jurisdictional, the burden is on [the plaintiff] to prove that it does not apply."  *Hardscrabble Ranch, L.L.C. v. United States*, 840 F.3d 1216, 1220 (10th Cir. 2016).

The Supreme Court has articulated a two-part test to determine whether challenged conduct falls within the discretionary function exception.  First, the court must consider whether the challenged conduct is discretionary, i.e., whether the action in question was "a matter of choice for the acting employee."  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  "Conduct is not discretionary if 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  In this event, the employee has no rightful option but to adhere to the directive.'"  *Garcia*, 533 F.3d at 1176 (quoting *Berkovitz*, 486 U.S. at 536).

If the court concludes that the challenged conduct is indeed discretionary, the court must then consider whether the challenged discretionary conduct is based on considerations of public policy.  *Berkovitz*, 486 U.S. at 536-37.  In undertaking this analysis, the court "do[es] not consider the employee's 'subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'"  *Garcia*, 533 F.3d at 1176 (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)).  If both prongs of this test are satisfied, then the discretionary function exception applies and the court lacks jurisdiction over the FTCA.  *Id.*  "Stated another way, if a plaintiff can establish that either element is not met, the plaintiff may proceed because the [discretionary function] exception does not apply."  *Id.*

A.      **Whether the Separation of BOP Inmates is Discretionary**

With respect to the first prong of the *Berkovitz* test, Defendant argues that "Plaintiff has not identified any law or policy that removes BOP's discretion concerning the separation of inmates, nor can he." [Doc. 24 at 6]; *see also Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008) ("[T]he burden under our case law to present evidence of a discretion-constraining regulation or policy resides with the plaintiffs"). Defendant references several sources which generally mandate certain procedures in the context of screening and classifying inmates, but argues that these sources do not *require* the separation of inmates in any particular situation. [*Id.* at 6-7]. In response, Mr. Martin cites several statutes, regulations, and BOP policies which he suggests mandate a specific course of conduct with respect to separating inmates within the BOP. *See, e.g.*, [Doc. 30 at 3, 4, 5, 6]. The court considers Plaintiff's assertions in turn.[7]

**BOP Program Statements**. First, Plaintiff references BOP Program Statement 5290.15, which sets forth a policy pursuant to 28 C.F.R. § 522.20,[8] *see* [Doc. 24-1 at 24], as well as BOP

_____

[7] In his Response, Mr. Martin references BOP Program Statements 4200.12 and 5510.15, as well as 28 C.F.R. § 511.10. *See* [Doc. 30 at 4]. These policies do not concern the separation or placement of inmates. *See* 28 C.F.R. § 511.10(b) (providing that this subpart covers "[s]earching non-inmates and their belongings . . . to prevent prohibited objects from entering a [BOP] facility or [BOP] grounds"); BOP Program Statement No. 4200.12 § 9-9, *available at* https://www.bop.gov/policy/progstat/4200.12.pdf (containing the Facilities Operations Manual, including provisions which require maintenance of metal detectors); BOP Program Statement No. 5510.15, *available at* https://www.bop.gov/policy/progstat/5510_015.pdf (titled "Searching, Detaining, or Arresting Visitors to Bureau Grounds and Facilities"); *see also United States v. Tidzump*, 841 F.3d 844, 845 n.1 (10th Cir. 2016) (the court may take judicial notice of BOP Program Statements). Insofar as Mr. Martin suggests these policies or regulations are relevant because they concern the maintenance of metal detectors, *see* [Doc. 30 at 4], the court respectfully disagrees that they are relevant here. Defendant's argument concerning the application of the discretionary function exception is limited only to Plaintiff's allegations concerning the failure to separate him from his cousin, not his allegations concerning the failure to prevent his cousin from bringing the metal blade into the recreation yard. *See* [Doc. 24 at 4].

[8] Section 522.20 provides that the purpose and scope of intake screening is to "ensure that [BOP] health, safety, and security standards are met." 28 C.F.R. § 522.20. In his Response, Mr. Martin states that Program Statement 5290.15 is "directed by" 28 C.F.R. § 5̲2̲2.20. *See* [Doc. 30 at 13].

Program Statement 5100.08. [Doc. 30 at 6, 13]. Mr. Martin suggests that these Program Statements mandate specific conduct and preclude BOP officials' discretion in the separation of inmates. *See, e.g.*, [*id.* at 4, 6].

Program Statement 5290.15 concerns "Intake Screening" and provides that "before placing [an] inmate in the institution's general population, staff shall ensure that health, safety, and security standards delineated in this Program Statement are met." [Doc. 24-1 at 24]. Among other directives, Program Statement 5290.15 requires staff to, "[i]mmediately upon an inmate's arrival[,] . . . interview the inmate to determine if there are non-medical reasons for housing the inmate away from the general population." [*Id.* at 26]. It further states that "[t]o ensure that separatees are not housed together, staff shall access the newly received inmate's . . . Intake Screening form and thoroughly review the CIM Clearance and Separatee Data to identify any separatees currently housed in the institution." [*Id.* at 27]. After conducting the required interview and reviewing the required files, the interviewer must then "make a decision whether the inmate is suitable for placement in general population." [*Id.* at 26 (emphasis added)]. Plaintiff argues that pursuant to Program Statement 5290.15, "[s]taff are to properly screen, all Inmates upon arrival," but "[e]vidence [of] this has yet to be presented." [Doc. 30 at 6 (quotation marks omitted)].

Meanwhile, Program Statement 5100.08, which concerns "Inmate Security Designation and Custody Classification," sets forth policies and procedures related to the classification of inmates for placement "in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society." [Doc. 24-2 at 11].

---

Section 552.20 concerns the use of force or physical restraint by BOP staff on inmates and does not involve the separation of placement of inmates. *See* 28 C.F.R. § 552.20. For this reason, the court assumes that Mr. Martin's reference to section 552.20 is a typographical error and does not address it here.

Plaintiff asserts that the following language removes discretion from BOP officials in the separation of inmates: "Institution staff should carefully review the management of 309/323[9] cases on an individual basis, applying sound correctional judgment that considers the safety and security of the inmate, the institution and its staff and the community." *See* [Doc. 30 at 6; Doc. 24-2 at 90].

Defendant argues that these Program Statements do not deprive BOP officials of discretion in separating inmates because neither Statement "mandates the assignment of an inmate to a separation status in any particular circumstance." [Doc. 42 at 3]. The court agrees. While Program Statement 5290.15 requires that an inmate be interviewed and that staff review certain information before determining an inmate's housing placement, "how that information is considered is a matter of discretion." *Little v. United States*, No. 5:11-cv-00041, 2014 WL 4102377, at *6 (N.D.W. Va. Aug. 18, 2014). Program Statement 5290.15 does not require BOP officials to separate inmates from others in certain circumstances, such that Mr. Martin could argue that the BOP violated a mandated policy by failing to separate him from his cousin. *See generally* [Doc. 24-1 at 24-29]. Furthermore, Mr. Martin does not allege that he was not interviewed at intake or that BOP staff failed to consider all relevant information before placing him in the general population, as required by the Program Statement, and that this violation resulted in the lack of separation from his cousin. *See generally* [Doc. 1];[10] *see also Clark v. United States*, 695 F. App'x 378, 386 (10th Cir. 2017) ("To circumvent the discretionary function exception, the mandatory duty alleged must be one

---

[9] Disciplinary transfers, or transfers that "result [from] an act(s) of misconduct related to documented poor institutional adjustment," are marked with a "309" code, while close supervision transfers, or transfers that result from "an investigation that indicates a safety, security, or escape risk," use the "323" code. *See* [Doc. 24-2 at 90, 105].

[10] In his Response, Mr. Martin asserts that there is "[n]o evidence" that he was properly screened when he arrived at USP Florence. [Doc. 30 at 5-6]. However, a plaintiff may not amend his Complaint by asserting new factual allegations in a response to a motion to dismiss. *Sudduth v. Citimortgage, Inc.*, 79 F. Supp. 3d 1193, 1198 n.2 (D. Colo. 2015). Accordingly, the court does not consider these new allegations in ruling on the Motion to Dismiss.

whose breach bears a causal relationship to the Plaintiffs' injuries, thereby giving rise to their cause of action against the government."); *Warren v. United States*, 244 F. Supp. 3d 1173, 1244 (D.N.M. 2017) (concluding that the plaintiff could not rely on BOP Program Statement where he had not alleged that a violation of the Program Statement had occurred). In sum, Program Statement 5290.15 does not mandate any specific conduct and does not preclude the availability of the discretionary function exception.

Similarly, Program Statement 5100.08 is not applicable here. As Mr. Martin himself quotes, *see* [Doc. 30 at 6], while Program Statement 5100.08 states that BOP staff "should carefully review" transfers on an individual basis, it further states that staff should apply "*sound correctional judgment* that considers the safety and security" of the inmate, the institution and its staff, and the community. [Doc. 24-2 at 90 (emphasis added)]. Similarly, the Program Statement expressly states its objective that "[e]ach inmate will be placed in a facility commensurate with their security and program needs through an objective and consistent system of classification *which also allows staff to exercise their professional judgment*." [*Id.* at 11 (emphasis added)]. This Program Statement "clearly allows the officers discretion in their decisions." *Willis v. Lappin*, No. 1:09-cv-01703-AWI, 2012 WL 4987764, at *13 (E.D. Cal. Oct. 17, 2012), *report and recommendation adopted*, 2013 WL 1151979 (E.D. Cal. Mar. 19, 2013). "[W]hen the relevant law leaves room for officials to exercise policy-oriented discretion in a particular area, that discretion will be protected even with regard to what may seem to be details of implementation." *Lopez v. United States*, 376 F.3d 1055, 1060-61 (10th Cir. 2004).

Moreover, Program Statement 5100.08 does not appear to be applicable to Plaintiff's allegations; the Program Statement concerns inmate security classification—i.e., the placement of an inmate in a facility with an appropriate security level—and provides that the BOP "shall

designate the place of the prisoner's imprisonment, and shall, subject to a number of factors, including the inmate's security designation and "other security concerns" of the BOP, "place the prisoner in a facility as close as practicable to the prisoner's primary residence." [Doc. 24-2 at 18]. But Mr. Martin does not allege that the BOP violated Program Statement 5100.08 or that the lack of separation from his cousin was a result of the BOP's failure to properly classify his or his cousin's security level. *See generally* [Doc. 1]; *Clark*, 695 F. App'x at 386. Accordingly, Program Statement 5100.08 does not demonstrate that BOP officials lacked discretion in the context of separating Plaintiff and his cousin.

**18 U.S.C. § 4042**. Next, Mr. Martin references 18 U.S.C. § 4042 multiple times in his Response, implying that the United States has a duty to protect inmates. *See, e.g.*, [Doc. 30 at 13, 14]. This statute provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of" and "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)-(3). But the statute "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates," *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997), and numerous Courts of Appeals have ruled that "even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." *Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998); *see also Donaldson v. United States*, 281 F. App'x 75, 77 (3d Cir. 2008); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003). "BOP officials are given no guidance, and thus have discretion, in deciding how to accomplish these [§ 4042] objectives." *Montez ex rel. Est. of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004). In light of this weight of authority, the court is respectfully not

persuaded that § 4042 precludes discretion in BOP officials' placement and separation of federal inmates.

>    ***28 C.F.R. § 524.72***.  Finally, Plaintiff references 28 C.F.R. § 524.72(f), which the court liberally construes as an assertion that this regulation precludes discretion in the separation of inmates.  *See* [Doc. 30 at 7].  Section 524.72 sets forth "CIM assignment categories," and subsection (f) states in pertinent part:

>> Separation.  Inmates who may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future.  Factors to consider in classifying an individual to this assignment include, but are not limited to, testimony provided by or about an individual (in open court, to a grand jury, etc.), and whether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution.

28 C.F.R. § 524.72(f).  The surrounding subparts set forth procedures in the classification of inmates, *see* 28 C.F.R. § 524.73, and mandate periodic review of an inmate's CIM assignment. *See* 28 C.F.R. § 524.75.

>    The Tenth Circuit has not spoken on whether § 524.72(f) mandates any specific conduct for purposes of determining whether the discretionary function exception applies.  The Seventh Circuit, however, has interpreted § 524.72(f) as "requir[ing] [BOP] employees to 'prevent any physical contact' between specified separated individuals." *Parrott v. United States*, 536 F.3d 629, 638 (7th Cir. 2008) (quoting 28 C.F.R. § 524.72(f)); *see also Martinez v. United States*, No. CIV-11-830-F, 2015 WL 6438748, at *7 (W.D. Okla. Sept. 16, 2015), *report and recommendation adopted*, 2015 WL 6438764 (W.D. Okla. Oct. 22, 2015) (concluding that the "only specific directive[]" contained in § 524.72(f) is that "an inmate with a 'separation' CIM assignment must be kept physically separate from a specified individual").  In *Parrott*, the Seventh Circuit reasoned that where a valid separation order is in effect, "there is no discretion" in determining whether to

abide by that separation order.  *Parrott*, 536 F.3d at 638.  In other words, if the BOP "failed to enforce its own classification decision," a plaintiff "would be able to escape the force of the 'discretionary function' exception to tort liability found in § 2680(a)."  *Id.*

The court finds the Seventh Circuit's reasoning in *Parrott* persuasive.  While the determination as to *whether* to separate inmates may be within the BOP's discretion, *see* 28 C.F.R. § 524.72(f) (setting forth factors to consider in determining whether inmates should be separated), if the BOP has exercised that discretion, determined that inmates must be separated, and designated an inmate with as a separatee with respect to a specific person, "there will be no shelter from liability" for disregarding that separation order "because there is no room for choice and the action will be contrary to policy."  *Cohen*, 151 F.3d at 1344-45; *see also Gaubert*, 499 U.S. at 316.  Thus, in determining whether any specific conduct was mandated under § 524.72(f)—and whether the discretionary function exception applies—"the existence (or absence) of [a separation] order is of central importance."  *Parrott*, 536 F.3d at 638.

Plaintiff alleges in his Complaint that he and his cousin "were known in [CIMs] and other Court documents not to be on [the] 'same' yard together."  [Doc. 1 at 4].  While Plaintiff does not expressly allege that there was a valid BOP separation order in effect at the time of the attack, the court must construe his allegations liberally, *Haines*, 404 U.S. at 520-21, and liberally construes this assertion as an allegation that Plaintiff and his cousin were designated in the CIM system as separatees with respect to one another.  Defendant, meanwhile, maintains that "Plaintiff did not have a separation status with respect to his cousin" at the time of the attack.  *See* [Doc. 24 at 10 n.4 (citing [Doc. 24-1 at ¶¶ 18-19])].  In other words, a factual dispute exists as to whether a separation order existed at the time Plaintiff was allegedly attacked by his cousin.

19

"[T]he determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues." *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).  Typically, a court may consider materials outside of the pleadings on a Rule 12(b)(1) motion mounting a factual attack on the court's subject matter jurisdiction without converting the motion into a motion for summary judgment.  *Clark*, 695 F. App'x at 382 n.2.  "But an exception arises where resolution of the jurisdictional question is intertwined with the merits of the case.  In such cases, a court considering evidence outside the pleadings is required to convert a Rule 12(b)(1) motion to dismiss into a summary judgment motion."  *Id.*  (citing *Pringle*, 208 F.3d at 1223).  Whether the jurisdictional inquiry is intertwined with the merits of the case turns on whether "resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."  *Ratheal v. United States*, No. 20-4099, 2021 WL 3619902, at *3 (10th Cir. Aug. 16, 2021) (citation omitted).  Because the resolution of the jurisdictional question turns on whether a separation order existed mandating that Plaintiff be kept separate from his cousin—i.e., an aspect of Plaintiff's substantive claim—the court concludes that the jurisdictional inquiry is intertwined with the merits of Plaintiff's claims and thus, to consider extraneous evidence, the court must convert the Motion to Dismiss into a motion for summary judgment under Rule 56.  *Compare Clark*, 695 F. App'x at 382 n.2 (declining to consider whether a motion to dismiss should have been converted into a motion for summary judgment where there were no "specific disputes of material fact involving merits issues").

The court has "wide discretion" to consider evidence outside of the pleadings to resolve a jurisdictional dispute under Rule 12(b)(1).  *Pringle*, 208 F.3d at 1222.  But as set forth above, if the court does consider evidence outside of the pleadings, it must convert the Motion to Dismiss into a motion for summary judgment.  Upon review of the entire case file, the court concludes that

the court could convert Defendant's [Rule 12(b)(6)] Motion into one for summary judgment, it declines to do so.  Instead, given the factual nature of the arguments presented, the court finds it appropriate to provide the parties with a 'reasonable opportunity to present all the material that is pertinent to the motion' in the context of the structured briefing requirements of the local summary judgment rules.").

Because the Parties' factual dispute prevents the court from determining whether a separation order was in effect on June 2, 2018—and thus, whether the discretionary function exception applies to preclude this court's jurisdiction over Plaintiff's FTCA claim—the Motion to Dismiss is **DENIED** insofar as it seeks dismissal of this portion of Plaintiff's FTCA claim for lack of subject matter jurisdiction.[11]  It may be prudent for the Parties to engage in a period of <u>limited</u> jurisdictional discovery concerning only the narrow jurisdictional and factual dispute: whether there was a valid BOP separation order in place mandating that Mr. Martin be separated from his cousin at the time Mr. Martin was attacked on June 2, 2018, or to seek leave to file an early motion for summary judgment.  *See Keyes v. United States*, No. 18-cv-01469-JLK, 2018 WL 11190661, at *5 (D. Colo. Dec. 6, 2018) ("I deem it prudent to set a limited and expedited schedule for discovery specifically related to application of the discretionary function exception."); *De Baca v. United States*, 403 F. Supp. 3d 1098, 1128 (D.N.M. 2019) ("The Court deems the discretionary-function . . . exception[] [to be a] jurisdictional issue[] on which the Tenth Circuit would direct the Court to permit discovery."); *U.S. ex rel. Morgan Bldgs. & Spas, Inc. v. Iowa Tribe of Okla.*, No. CIV-09-730-M, 2010 WL 597125, at *2 (W.D. Okla. Feb. 16, 2010) (denying motion to dismiss for lack of jurisdiction to permit the parties to conduct discovery on the issue).  **The court**

---

[11] Having reached this conclusion, the court does not pass on the second prong of the *Berkovitz* test—whether the challenged conduct implicates public policy concerns or is susceptible to policy analysis.  *See Sydnes*, 523 F.3d at 1185

**encourages the Parties to consider what limited jurisdictional discovery might be appropriate and to be prepared to discuss this issue at a forthcoming Status Conference**.

**III.     Failure to State a Claim**

Next, Defendant argues that insofar as Plaintiff's claims are based on the government's alleged failure to protect Plaintiff by (1) permitting an inmate to bring a metal blade into the recreation yard or (2) failing to intervene in the attack on Plaintiff, he fails to state a claim under Rule 12(b)(6).  [Doc. 24 at 11].  First, Defendant argues that Plaintiff's allegations concerning the metal blade and the metal detector are insufficient to state a claim because they are "premised on an unfounded assumption that Plaintiff's cousin carried the blade through the metal detector immediately before the attack occurred."  [*Id.*].  Defendant maintains that "the simple fact that Plaintiff was attacked with a blade in the yard does not create an inference that the assailant carried the blade through a metal detector," as there are "multiple ways that the blade could have gotten into the yard, some of which would have evaded the metal detectors."  [*Id.* at 11-12].  Second, the United States asserts that to the extent Plaintiff challenges an alleged failure of BOP officials to intervene in the attack, it is "not plausible that staff in a gun tower or in an office would have had sufficient time to react from those locations to the yard in order to intervene in a surprise attack." [*Id.* at 13].  For these reasons, the United States contends that Plaintiff has failed to state an FTCA claim.

*The Failure to Prevent the Metal Blade Entering the Yard*.  Defendant maintains that Plaintiff fails to state a claim upon which relief can be granted based on the BOP's alleged failure to prevent Plaintiff's cousin from bringing a metal blade into the recreation yard.  [*Id.* at 11-12]. According to Defendant, "simple fact that Plaintiff was attacked with a blade in the yard does not create an inference that the assailant carried the blade through a metal detector," offering "multiple

ways" that the blade alternatively could have entered the yard, such as a person throwing the blade into the yard or a person smuggling the blade the yard in a body cavity.  [*Id.*].  The court is respectfully not persuaded by this argument.  When ruling on a motion to dismiss, it is not the court's role to credit alternative plausible explanations—which have no basis in the Complaint—to explain the blade making its way into the recreation yard, nor is it the court's role to ascertain whether Plaintiff's suggested series of events is the most plausible explanation of events.  *See Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on [a motion to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.").  Indeed, such plausibility determinations are within the purview of the factfinder, not the court.  *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 45 (1st Cir. 2013).  Rather, the court must determine whether the allegations "raise a right to relief above the speculative level."  *Rupp v. Pearson*, 658 F. App'x 446, 449 (10th Cir. 2016) (quotation omitted).  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (quoted favorably in *Rupp*, 658 F. App'x at 449).  Accordingly, the court addresses only whether Plaintiff's allegations that his cousin brought the blade into the recreation yard through the metal detectors raise a right to relief beyond a speculative level.

In his Complaint, Mr. Martin alleges that he went through "several Security Check Points," including metal detectors, to enter the recreation yard.  [Doc. 1 at 11].  He further asserts that "another inmate was able to clear at least (2) Check points being manned by Federal Officers" and that these checkpoints included "metal scanners."  [*Id.* at 4].  And while waiting in the recreation

yard, Mr. Martin was attacked by his cousin and stabbed with a metal blade that was six or seven inches in length. [*Id.* at ¶¶ 13, 16]. Plaintiff states that the metal detectors are set off by "staples" and he asserts that on information and belief, the metal in the blade used by Plaintiff's cousin would have set off the metal detectors and would have alerted any observant officer on duty that metal was entering the yard. [*Id.* at 11; *id.* at ¶ 14].

While a close call, the court concludes that Plaintiff has alleged sufficient facts to raise a plausible inference that his cousin carried the blade into the recreation yard, through the metal detectors, and that the BOP officers on duty failed to stop him from doing so. The court notes that Mr. Martin does not actually allege that his cousin, specifically, would have had to pass through metal detectors before entering the yard. *See generally* [*id.*].[12] However, Plaintiff asserts that he had to pass through several security check points to enter the yard, that "another inmate" was able to "clear" two security checkpoints with metal detectors, that his cousin entered the yard with a blade, and that the blade "would have set off the metal detector" and "would have alerted" an officer on duty of the weapon. *See* [*id.* at 4, 11, ¶¶ 12-17]. Liberally construing these allegations together and taking the allegations as true, the court concludes that Mr. Martin has plausibly alleged that his cousin carried a blade into the recreation yard and the federal officers were negligent in failing to stop him. At this stage, these allegations are sufficient to survive Defendant's Motion to Dismiss.

***Failure to Intervene in the Attack on Plaintiff.*** Next, the United States asserts that Plaintiff's FTCA claim should be dismissed to the extent it is based on allegations suggesting that BOP officials failed to timely intervene in his cousin's attack. [Doc. 24 at 13]. According to

---

[12] Mr. Martin asserts in his Response that all inmates must go through two metal detectors before leaving any unit. [Doc. 30 at 8]. However, as explained above, the court cannot consider these new allegations in ruling on the Motion to Dismiss. *Sudduth*, 79 F. Supp. 3d at 1198 n.2.

Defendant, Plaintiff's allegations are insufficient to raise a plausible inference of liability because "[e]ven assuming that BOP staff were watching Plaintiff at the exact moment the attack began, it is simply not plausible that staff in a gun tower or in an office would have had sufficient time to react from those locations [and] to [enter] the yard in order to intervene in a surprise attack." [*Id.*]. Defendant's assertions are not supported by any legal authority. [*Id.*].

The court respectfully finds that this argument confounds the sufficiency of Plaintiff's allegations at the pleading stage with the ultimate merits of his claim. The court was unable to locate any case law setting forth the pleading requirements of a negligence claim based on a failure to protect or intervene under Colorado law,[13] and neither Party has presented the court with pleading standards applicable to this portion of Plaintiff's claim. *See* [Doc. 24; Doc. 30]. However, in the excessive force context under 42 U.S.C. § 1983, the Tenth Circuit has held that to hold a defendant liable based on a failure to intervene, the defendant "must have had a realistic opportunity to intervene to prevent harm from occurring." *Savannah v. Collins*, 547 F. App'x 874, 876 (10th Cir. 2013). And in this constitutional context, the sufficiency of the allegations may turn on the scope of the conduct in which the defendant is accused of failing to intervene. *See, e.g.*, *Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008) (defendant had an opportunity to intervene in an arrest that lasted "between three and five minutes"); *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 (11th Cir. 2000) (two minutes was sufficient time to intervene); *compare Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n.3 (1st Cir. 1990) (the complaint failed to state a claim based on a failure to intervene where the allegations established that the "attack

---

[13] Defendant does not argue that an alleged failure to intervene or a failure to protect cannot form the basis of an FTCA claim, *see* [Doc. 24], and thus, for purposes of the instant Motion, the court assumes that it may. *Cf. Ajaj v. United States*, 293 F. App'x 575, 581 (10th Cir. 2008) (the Tenth Circuit recognizing its previous conclusion that "Colorado law would impose a duty of care on prison officials to protect inmates' health and safety") (quotation and alteration marks omitted).

came quickly and was over in a matter of seconds").[14]  The determination of whether a defendant

had a realistic opportunity to intervene, however, is typically an issue of fact,  *Rustgi v. Reams*,

536 F. Supp. 3d 802, 816 (D. Colo. 2021), which cannot be resolved on a motion to dismiss.

*Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984, 985 (10th Cir. 2002).

Notably, the Complaint does not set forth how close the guard tower or offices are to the

recreation yard, nor does Plaintiff expressly set forth how long the attack occurred, so as to render

it *implausible* that federal officials could have breached a duty to Plaintiff by failing to intervene

in the attack.  Rather, Plaintiff alleges that his cousin snuck up on him and began pushing on his

head before kicking him.  [Doc. 1 at ¶¶ 12, 16].  At this point, Plaintiff began defending himself

by kicking at his cousin's hand.  [*Id.* at ¶ 18].  Then, according to Plaintiff, his cousin began

attacking him with the metal blade, an attack which lasted long enough to create nine puncture

wounds.  [*Id.* at ¶¶ 18, 20].  Mr. Martin alleges that the attack was in view of "staff in the Guard

Tower, and the Lieutenants Office" and that "[c]ompound [o]fficers and other [s]taff" were

watching the attack unfold from their offices.  [*Id.* at ¶¶ 16, 19].  Construing Plaintiff's allegations

liberally, the court concludes that the allegations are sufficient, at the pleading stage, to allege a

failure to intervene on the part of BOP officials.  If Defendant seeks to challenge the merits of

Plaintiff's failure-to-intervene allegations, it may do so on summary judgment or at trial.  For these

reasons, the Motion to Dismiss is **DENIED** insofar as it seeks dismissal of Plaintiff's FTCA claim

under Rule 12(b)(6).

---

[14] To be sure, the court does not suggest that the standards relevant to a § 1983 failure-to-intervene claim would have any bearing on a state-law negligence claim based on a failure to intervene; rather, the court references these cases only to provide analogous context to the court's determination of the sufficiency of the allegations.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     The Motion to Dismiss [Doc. 24] is **DENIED**;

(2)     Within **14 days** of the date of this Order, Defendant **SHALL ANSWER** Plaintiff's Complaint;

(3)     The court encourages the Parties to confer regarding <u>limited</u> jurisdictional discovery concerning whether there was a valid BOP separation order in place mandating that Mr. Martin be separated from his cousin at the time Mr. Martin was attacked on June 2, 2018 and to be prepared to discuss this issue at a forthcoming Status Conference;

(4)     To facilitate that conferral, the Status Conference currently set for June 28, 2022 at 9:30 a.m. is **VACATED** and **RE-SET** to **August 5, 2022 at 9:30 a.m.**;

(5)     Given the timing of this Order, counsel for the Defendant shall contact Plaintiff's facility and/or case manager to advise of the change in date for the Status Conference; and

(6)     A copy of this Order, marked as legal mail, shall be sent to:

David J. Martin, #05051-051
Terre Haute - Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808

and

Case Manager for David J. Martin, #05051-051
Terre Haute - Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808


DATED:  June 23, 2022                BY THE COURT:

                                     _____
                                     Nina Y. Wang
                                     United States Magistrate Judge