IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 21–cv–02107–MDB

DAVID J. MARTIN,

 Plaintiff,

v.

UNITED STATES OF AMERICA,

 Defendant.

---

## ORDER

---

 This matter is before the Court on Defendant United States of America's ["Defendant"] Motion to Dismiss Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6). ["Motion to Dismiss"], Doc. No. 67.) Plaintiff David Martin ["Plaintiff"] filed a response to the Motion to Dismiss (["Response"], Doc. No. 68) to which Defendant has replied. (["Reply"], Doc. No. 82.) Upon review of the Motion to Dismiss, the related briefing, and the relevant law, Defendant's Motion to Dismiss is **DENIED**.

 Also before the Court is Plaintiff's Motion for Appointment of Counsel From Pro Bono List for Reasons of Extraordinary Circumstances. (["Motion for Counsel"]; Doc. No. 59.) Defendant has not filed a response to the Motion for Counsel, and the time to do so has lapsed. Upon review of the motion and the relevant law, Plaintiff's Motion for Counsel is **DENIED** ***without prejudice***.

### SUMMARY FOR *PRO SE* PLAINTIFF

The Court is denying Defendant's Motion to Dismiss and directing Defendant to answer the Amended Complaint. However, the 'failure to separate' claim may be subject to the discretionary function exception, and if it is, the Court will not have subject matter jurisdiction to hear that claim. Because the Court does not have enough information to know whether that claim is subject to the discretionary function exception, the Court is ordering a Status Conference on May 8, 2023. At that time, the Court will hear the parties on this issue and set a schedule for limited jurisdictional discovery into the question of whether an applicable separation order was in place on or around June 1, 2018. The Court notes that the burden is on you, as plaintiff in this case, to satisfy this jurisdictional requirement. The Court is also denying your Motion for Counsel. Because the denial is without prejudice, you may renew your request for *pro bono* counsel at a later stage in the case if, for example, the case is nearing trial. This is only a high-level summary of the Court's decision. The Court's entire decision is set forth below, and you should read it carefully.

## STATEMENT OF THE CASE

### I.     Plaintiff's Factual Allegations

In 2013, Plaintiff was tried in federal court on charges of murder and robbery. (Doc. No. 60 ¶ 12.) Plaintiff was tried with "several co-defendants," one of whom was his cousin, Geshik-O-Bin Martin ["Geshik"]. (*Id.* ¶¶ 12, 15.) Plaintiff contends that while in pretrial detention, he was separated from his co-defendants, including Geshik, "by an [a]dministrative [o]rder … of the U.S. Department of Justice." (*Id.* ¶ 19; *see id.* ¶ 59 (calling this a "keep away order").)

During the course of the criminal proceedings, Plaintiff informed Geshik through counsel that unless Geshik admitted he alone committed the murder in question, Plaintiff would testify

against Geshik and "reveal the party who was responsible." (*Id.* ¶ 14.) Plaintiff represents that, based on this threat, Geshik admitted to the murder and was eventually found guilty. (*Id.* ¶ 15.) For his part, Plaintiff was found guilty of robbery and not guilty of murder. (*Id.* ¶ 13.) Plaintiff says his threat to testify against Geshik created a "security issue" for Plaintiff. (*Id.* ¶ 16.) Because of this, Plaintiff alleges that he asked his criminal defense attorney to relay a message to the prosecuting United States Attorney and the Marshal Service that he desired to be separated from Geshik during his incarceration. (*Id.* ¶ 17.) Plaintiff was "committed to the Bureau of Prisons [on] November 20, 2013. (*Id.* ¶ 20.)

During Plaintiff's incarceration, on June 1, 2018, Plaintiff was transferred to United States Penitentiary, Florence ["USP Florence"]. (*Id.* ¶ 22.) As part of his transfer, Plaintiff underwent the "prisoner intake process" at USP Florence. (*Id.* ¶ 23.) During this intake process, Plaintiff spoke to a member "of the Unit Staff" and asked whether a "[s]eperation [o]rder" existed to keep Plaintiff separated from Geshik. (Doc. No. 60 ¶ 25.) Plaintiff alleges he told the staff member that he had not testified against Geshik, had not assisted law enforcement in prosecuting Geshik, and was not associated with a gang, but thought a separation order existed for Geshik originating "way back in 2012–13." (*Id.* ¶ 28.) Plaintiff alleges that the staff member stated that no separation order existed on his behalf for any then-inmate at UPS Florence. (*Id.*) Based on the statements made during his initial processing, Plaintiff believed Geshik was not at UPS Florence. (*Id.*) However, Geshik indeed was at UPS Florence at the time of Plaintiff's transfer. Plaintiff alleges that the intake officer "knew" or "should have known" that there "was a separation issue." (*Id.* ¶ 59(f).) Plaintiff alleges that no staff member who interviewed him or reviewed his files was Central Inmate Monitoring ["CIM"] certified and therefore no one was

qualified to decide his placement, and everyone acted "without the proper information" during his intake. (*Id.* ¶¶ 61–68.)

Plaintiff alleges that Geshik had been alerted to Plaintiff's pending arrival by public notice or UPS Florence staff. (*Id.* ¶ 30.) Plaintiff also alleges that shortly after his intake, a fellow inmate informed Plaintiff that Geshik "wanted to meet him in the [m]orning at the [b]leachers." (*Id.* ¶ 31.)

The next morning, June 2, 2018, Plaintiff went to the "rec yard" to meet Geshik. (*Id.* ¶ 32.) Plaintiff contends that to enter the yard, all inmates must pass through one of several metal detectors staffed by at least one correctional officer. (*Id.*) Plaintiff contends that the metal detectors "could detect staples" and have been known to pick up "pens, paperclips," and metal left in the body by medical procedures. (*Id.* ¶¶ 71, 73, 74.) Plaintiff also alleges that two guards staffed the metal detector he passed through to enter the yard. (*Id.* ¶ 35.) Plaintiff further asserts that a guard tower is located at the center of the yard "with full view of the yard," and on the day in question it was staffed and armed with lethal and non-lethal weapons. (*Id.* ¶¶ 36, 39.) Plaintiff alleges that prison windows create a "circular view" of the yard from inside prison buildings. (*Id.* ¶ 37.) Plaintiff also asserts that the yard is under the video camera surveillance. (*Id.* ¶ 104.)

After entering the yard, Plaintiff walked to the bleacher area and waited for Geshik. (*Id.* ¶ 40.) Plaintiff alleges that shortly thereafter, he was ambushed by Geshik, who kicked him in the back of the head. (*Id.* ¶ 41.) Geshik then took a "home-made" 5-6 inch long metal knife and stabbed Plaintiff several times, leaving wounds in his back, "upper right extremity," "mid chest," lower abdomen, throat, and chin. (*Id.* ¶ 44, 51, 71.) Plaintiff alleges that the knife was not "recovered" by prison officials following the attack. (*Id.* ¶ 44.) Plaintiff states that he fought back

in self-defense, eventually causing Geshik to end the assault and flee, taking the knife with him. (*Id.* ¶ 48.) Plaintiff alleges that the fight "lasted several minutes." (*Id.* ¶ 106.) Plaintiff asserts that he watched Geshik walk back through the metal detector into the prison while still carrying the knife. (*Id.* ¶ 79.) Plaintiff does not claim to know when the knife was brought to the yard or who carried the knife to the yard. (*Id.* ¶ 78.)

Plaintiff alleges that following the assault, he managed to walk toward a windowed administrative office. (*Id.* ¶ 50.) There, multiple officers—who were "not in a hurry"—exited the offices to assist him, with one saying, "[w]e seen it," (sic) and "let[']s go to a clinic." (*Id.*) Plaintiff was taken to Parkview Medical Center in Pueblo for treatment. (*Id.* ¶ 51.).

## II.    Procedural History

Plaintiff initiated this action on August 2, 2021. (Doc. No. 1.) Plaintiff's original complaint brought three negligence claims against the United States under the Federal Tort Claims Act ["FTCA"] for: (1) failure to separate Plaintiff from Geshik at USP Florence; (2) failure to prevent Geshik from bringing a knife into the recreational yard; and (3) failure to intervene in the attack while it was occurring. (*Id.*) On January 13, 2022, Defendant moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (Doc. No. 24.) In its original motion to dismiss, Defendant argued (1) that the court lacked subject matter jurisdiction over Plaintiff's failure to separate claim because the claim was subject to the FTCA's discretionary function exception; and (2) that Plaintiff's remaining claims failed to state a cause of action under Fed. R. Civ. P. 12(b)(6). (Doc. No. 24.) However, on June 23, 2022, the Honorable Nina Y. Wang denied the motion to dismiss, finding the court could not determine

whether the discretionary function exception applied to Plaintiff's first claim,[1] and that Plaintiff

had stated a claim for negligence in his second and third claims. (Doc. No. 53 at 7–27.) Judge

Wang directed Defendant to answer the complaint and directed the parties to "confer

regarding limited jurisdictional discovery" as to the existence of a valid Bureau of Prison

["BOP"] separation order "mandating that Mr. Martin be separated from [Geshik] at the time Mr.

Martin was attacked." (*Id.* at 22.) Subsequent to Judge Wang's order, the case was reassigned to

the undersigned.

On August 3, 2022, Plaintiff filed an Amended Complaint. (Doc. No. 60.) The Amended

Complaint expanded on Plaintiff's allegations and added a fourth negligence claim against

Defendant United States of America under the FTCA. (*Id.*) In his Amended Complaint, Plaintiff

claims that BOP staff were negligent in: (1) failing to separate Plaintiff from Geshik at USP

Florence ["Failure to Separate"] (*id.* at 15–19); (2) failing to properly interview Plaintiff upon his

arrival at USP Florence ["Failure to Properly Interview"] (*id.* at 19– 21); (3) failing to prevent

Geshik from bringing a knife into the recreational yard ["Failure to Prevent"] (*id.* at 21–27); and

(4) failing to intervene in attack while it was occurring ["Failure to Intervene"]. (*Id.* at 27–30.)

On September 12, 2022, Defendant filed this Motion to Dismiss. (Doc. No. 67.) As in its

original motion to dismiss, Defendant argues that the Court lacks subject matter jurisdiction over

Plaintiff's Failure to Separate claim as "decisions concerning management and safety of inmates

are subject to discretional function exception" to the FTCA. (*Id.* at 5–14.) Likewise, Defendant

---

[1] Judge Wang declined to consider evidence outside of the pleadings to resolve this jurisdictional dispute, finding that such analysis would convert the motion to dismiss into a motion for summary judgment and finding that "determination of the issue on summary judgment is premature."

again argues that the Court must dismiss Plaintiff's third and fourth claims for Failure to Prevent and Failure to Intervene because Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6). (*Id.* at 16–20.) Finally, as to the new Failure to Properly Interview claim, Defendant argues that the Court must dismiss this claim because Plaintiff has failed to exhaust his administrative remedies. (*Id.* at 14–16.)

## LEGAL STANDARD

### I.      Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, courts "are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Id.* at 909.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted).

## II.    The Federal Tort Claims Act

The United States is immune from suit and must consent to being sued before this Court can have subject matter jurisdiction. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The government waives sovereign immunity for state law tort claims under the FTCA. *See Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017); *Tippett v. United States*, 108 F.3d 1194, 1196 (10th Cir. 1997). The relevant statutory language specifies the circumstances under which a waiver of sovereign immunity arises:

> …the district courts…shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages…for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

8

*accordance with the law of the place where the act or omission occurred*.

28 U.S.C.A. § 1346(b)(1). In other words, the government only waives sovereign immunity when the claimant would have a viable claim against a private party under the laws of the subject state, here, Colorado. Although the waiver language is broad, its scope is limited by several exceptions, including the 'discretionary function' exception, which is at issue here.

## III.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a Rule 12(b)(6) motion to dismiss, means that the plaintiff pleaded facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," *i.e.,* those allegations which are legal conclusions, bare assertions, or

merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id*. at 679.

That being said, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## IV.   *Pro Se* Plaintiff

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has

violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## ANALYSIS[2]

### I.       The Court's Subject Matter Jurisdiction Over the 'Failure to Separate' Claim

In his first claim, Plaintiff contends that Defendant was negligent in failing to separate Plaintiff from Geshik in the USP-Florence prison population. (Doc. No. 60 at 15–19.) In its Motion to Dismiss, Defendant renews its argument that this claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because it is subject to the FTCA's "discretionary function exception." (Doc. No. 67 at 5–14); *see Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995) ("If the discretionary function exception applies to the challenged conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit."). Judge Wang previously rejected this argument. (Doc. No. 53 at 11–23.)

The discretionary function exception excludes from the FTCA's waiver of immunity any claim that is:

---

[2] The Court notes it is not bound by Judge Wang's June 23, 2022, Order, which considered a prior version of the now operative Amended Complaint. However, to the extent Judge Wang considered the same allegations and legal issues now before the Court, the Court finds her order persuasive. (*See* Doc. No. 53.)

> based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). "Courts employ the two-pronged test set forth in *Berkovitz v. United States* in order to determine whether the discretionary function exception applies: (1) whether there was a prescribed course of action; and (2) whether the action was of the kind that the discretionary function exception was designed to shield." *Scarborough v. United States*, No. 15-CV-00242-KLM, 2017 WL 1243014, at *3 (D. Colo. Mar. 17, 2017) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

The first step of the *Berkovitz* test requires a court to determine whether the challenged conduct "involves an element of judgment or choice." *Berkovitz*, 486 U.S. at 536. If it does, it is "discretionary and falls within the language of the exception." *Kiehn v. United States*, 984 F.2d 1100, 1102 (10th Cir. 1993). On the other hand, if the challenged conduct involves "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow," the exception does not apply. *Berkovitz*, 486 U.S. at 536. "[T]he burden … to present evidence of a discretion-constraining regulation or policy resides with the plaintiffs." *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008); *see Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction.").

"If the conduct involves discretionary judgment under the first step of *Berkovitz,* then we must apply the second step, which requires this court to 'determine whether that judgment is the

kind that the discretionary function exception was designed to shield.'" *Kiehn*, 984 F.2d at 1103

(quoting *Berkovitz*, 486 U.S. at 536). "The exception protects only those discretionary actions or

decisions which are 'based on considerations of public policy.'" *Id.* (quoting *Berkovitz*, 486 U.S.

at 537). The second step is meant to "prevent judicial 'second-guessing' of legislative and

administrative decisions grounded in social, economic, and political policy through the medium

of an action in tort." *Berkovitz*, 486 U.S. at 536–37 (quoting *United States v. Varig Airlines*, 467

U.S. 797, 814 (1984)). For an FTCA claim to avoid Rule 12(b)(1) dismissal, the alleged

offending conduct must not have involved a discretionary function or must not be conduct the

exception was designed to shield from suit.

### A. Step One: The Existence of a Discretion-Constraining Law or Policy

With respect to the first *Berkovitz* step, Defendant argues, "Plaintiff has not identified any

law or policy that removes BOP's discretion concerning the separation of inmates, nor can he."

(Doc. No. 67 at 7.) In response, Plaintiff cites one statute and one federal regulation he contends

mandate a specific course of conduct with respect to separating inmates within BOP, both of

which he raised in response to the original motion to dismiss. The Court will consider these

sources of law in turn.

First, Plaintiff references 18 U.S.C. § 4042 for the proposition that the United States has a

"duty to protect" inmates. (Doc. No. 68 at 14.) Judge Wang previously found that the statute did

not preclude application of the discretionary function exception. (*See* Doc. No. 30 at 13, 14; Doc.

No. 53 at 17–18.)

Section 4042 requires BOP to "provide suitable quarters and provide for the safekeeping,

care, and subsistence of" and "provide for the protection, instruction, and discipline of all

persons charged with or convicted of offenses against the United States." 18 U.S.C. §

4042(a)(2)-(3). However, as persuasively analyzed by Judge Wang, "the statute 'sets forth no

particular conduct BOP personnel should engage in or avoid while attempting to fulfill their duty

to protect inmates and numerous Courts of Appeals have ruled that 'even if § 4042 imposes on

BOP a general duty of care to safeguard prisoners, BOP retains sufficient discretion in the means

it may use to fulfill that duty to trigger the discretionary function exception.'" (Doc. No. 53 at 17

(quoting *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997); *Cohen v. United States*,

151 F.3d 1338, 1342 (11th Cir. 1998)) (citing *Donaldson v. United States*, 281 F. App'x 75, 77

(3d Cir. 2008); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003)).) "BOP officials

are given no guidance, and thus have discretion, in deciding how to accomplish these [§ 4042]

objectives." *Montez ex rel. Est. of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004).

The Court agrees with Judge Wang that 18 U.S.C. § 4042 is not a discretion-constraining statute.

Second, Plaintiff focuses on 28 C.F.R. § 524.72, which sets forth "CIM assignment

categories." Subsection (f) states in pertinent part:

> Separation. Inmates who may not be confined in the same institution (unless the
> institution has the ability to prevent any physical contact between the separatees)
> with other specified individuals who are presently housed in federal custody or
> who may come into federal custody in the future. Factors to consider in
> classifying an individual to this assignment include, but are not limited to,
> testimony provided by or about an individual (in open court, to a grand jury, etc.),
> and whether the inmate has exhibited aggressive or intimidating behavior towards
> other specific individuals, either in the community or within the institution.

28 C.F.R. § 524.72(f); *see* 28 C.F.R. § 524.73 (setting forth procedures in the classification of

inmates); 28 C.F.R. § 524.75 (mandating periodic review of an inmate's CIM assignment).

Judge Wang considered this argument as well. She noted that the Tenth Circuit has not

discussed whether 28 C.F.R. § 524.72(f) is a discretion-constraining regulation, but the Seventh

Circuit has previously stated that Section 524.72(f) "require[s] [BOP] employees to 'prevent any physical contact' between *specified separated individuals.*" *Parrott v. United States*, 536 F.3d 629, 638 (7th Cir. 2008) (emphasis added) (quoting 28 C.F.R. § 524.72(f)); (*see* Doc. No. 53 at 18.) "In *Parrott*, the Seventh Circuit reasoned that where a valid separation order is in effect, there is no discretion in determining whether to abide by that separation order. In other words, if BOP failed to enforce its own classification decision, a plaintiff would be able to escape the force of the discretionary function exception to tort liability found in § 2680(a)." (Doc. No. 53 at 19 (internal citations and quotation marks omitted) (quoting *Parrott*, 536 F.3d at 638)); *see Martinez v. United States*, No. CIV-11-830-F, 2015 WL 6438748, at *7 (W.D. Okla. Sept. 16, 2015), *report and recommendation adopted*, No. CIV-11-830-F, 2015 WL 6438764 (W.D. Okla. Oct. 22, 2015) ("[A]n inmate with a separation CIM assignment must be kept physically separate from a specified individual" (citing 28 C.F.R. § 524.72(f)). However, whether or not to issue a separation order in the first place is a matter of BOP discretion. *Calderon*, 123 F.3d at 949–50 (holding that BOP officials' decision whether to separate inmates is discretionary).

Accordingly, to determine whether or not this claim is subject to the discretionary function exception, "the existence (or absence) of [a separation] order is of central importance." *Parrott*, 536 F.3d at 638.

Defendant argues that "the duty to ensure that inmates with a separation assignment are separated from one another does not apply here because Plaintiff does not actually allege that he had a separation assignment from his cousin at the time of the attack." (Doc. No. 67 at 9.) Plaintiff's Amended Complaint is somewhat vague about the existence of a separation order when he was transferred to USP Florence. (*See* Doc. No. 60 ¶ 25 (stating that Plaintiff asked

BOP employees whether a separation order existed to keep him separated from Geshik); *id.* ¶ 28 ("I think that I have a CIMS from my Cousin, way back in 2012–13."). However, along with his Response to the Motion to Dismiss, Plaintiff submitted the "Swarn (sic) Declaration of David J. Martin," in which he contends, "I did … inform [intake] it was my belief that … there was a separation order … as a result of [Plaintiff's threat to testify against Geshik at] trial." (Doc. No. 69 ¶ 14.) For now, the Court finds this a sufficient proffer that a separation order existed. Thus, because Defendant contends that "in fact, there was no such separation assignment" (Doc. No. 67 at 9),[3] and Plaintiff contends there was, "a factual dispute exists as to whether a separation order existed at the time Plaintiff was allegedly attacked by his cousin." (Doc. No. 53 at 19.)

As was the case at the time of Judge Wang's order, discovery has not yet commenced, and there is no evidence for the Court to consider outside of Plaintiff's declaration and Defendant's affidavits. (*See* Doc. No. 65 (explaining that the Court declined to set discovery deadlines during August 22, 2022, Status Conference).) The Court will set a status conference to hear the parties on this issue and set an expedited schedule for limited jurisdictional discovery to determine whether there was a valid BOP separation order mandating Plaintiff's separation from Gehsik, on or about June 1, 2018. *See Keyes v. United States*, No. 18-cv-01469-JLK, 2018 WL 11190661, at *5 (D. Colo. Dec. 6, 2018) ("I deem it prudent to set a limited and expedited schedule for discovery specifically related to application of the discretionary function exception."); *see also Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002) (explaining that refusing to grant discovery "constitutes an abuse of discretion if the denial

---

[3] Defendant cites the affidavits of BOP employees Tracey DuBose and Sarah Otto for the proposition that no separation order involving Plaintiff and Gehsik, in fact, existed at the time of Plaintiff's transfer. (Doc. No. 67 Ex. A ¶¶ 18, 21; Ex. B ¶ 18.)

results in prejudice to a litigant," and "[p]rejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary" (quotation and alteration omitted)). Importantly, the Court's subject matter jurisdiction over this claim remains unclear, and by denying the Motion to Dismiss as to this claim, the Court *does not* conclude that the discretionary function exception is inapplicable.[4] The Court also notes that it is Plaintiff's burden to satisfy this jurisdictional prerequisite. *Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998) ("The discretionary function exception poses a jurisdictional prerequisite to suit, which the plaintiff must ultimately meet as part of his overall burden to establish subject matter jurisdiction.").

## II.   The 'Failure to Properly Interview' Claim and Administrative Exhaustion

In his second claim, Plaintiff contends that the USP Florence officials tasked with conducting his intake processing "failed to properly interview [him]," failed to use "CIMs qualified workers" to interview him, and failed to consider all relevant information before [placing] him in the general population," including information regarding any prior separation orders. (Doc. No. 60 ¶¶ 59(c), 65, pg. 19.) In the Motion to Dismiss, Defendant argues this claim must be dismissed under Rule 12(b)(1). Specifically, Defendant contends that the Court lacks subject matter jurisdiction because Plaintiff failed to exhaust his administrative remedies on this claim by not including the Failure to Properly Interview allegations in his administrative tort claim. (Doc. No. 67 at 14.)

---

[4] Because the Court is unable to determine the outcome of step one of the *Berkovitz* test, it declines to proceed to step two.

"Under the Federal Tort Claims Act, a tort action 'shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing[.]'" *Gabriel v. United States*, 683 F. App'x 671, 672 (10th Cir. 2017) (quoting 28 U.S.C. § 2675(a)). "A claim is properly presented to an agency only if the language of the claim 'serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct.'" *Barnes v. United States*, 707 F. App'x 512, 516 (10th Cir. 2017) (quoting *Staggs v. United States*, 425 F.3d 881, 884 (10th Cir. 2005)). The purpose of this requirement is "to give the agency notice of the claim, an opportunity to investigate, and a chance to settle the claim prior to litigation." *Montoya v. United States*, No. 1:21-cv-01209-KWR-JHR, 2022 WL 1240071, at *2 (D. N.M. Apr. 27, 2022) (quoting *Lopez v. United States*, 823 F.3d 970, 977 (10th Cir. 2016)). However, "the FTCA's notice requirements should not be interpreted inflexibly." *Est. of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 853 (10th Cir. 2005). To this end, "[s]everal courts in this jurisdiction have … interpreted [28 U.S.C. § 2675(a)] to require notice of the facts and circumstances underlying a claim rather than the exact grounds upon which plaintiff seeks to hold the government liable." *Id.* at 854.

Defendant argues that Plaintiff's administrative claim makes no express reference to his "intake" process. (Doc. No. 67-3 at 48–59.) Plaintiff argues that his references to the intake process can be found in the following allegations: (1) "the Special Investigation Services that … unreasonably, un-justifiably and contrary to well established [law] … permitted the [i]nvestigations to be lowered, which permitted an attack on another inmate which could have been prevented," and (2) "the [c]ompound [o]fficer, unreasonably, unjustifiably, and contrary to

well established [law] … permitted the security to be lowered, and permitted an attack on

another inmate, that could have been prevented." (Doc. No. 68 at 16–17; Doc. No. 67-3 at 54.)

The Court agrees with Defendant that Plaintiff's references to the intake process are not

explicit. However, Plaintiff's allegations—construed liberally—do appear to take issue with

BOP's security assessments, which necessarily occurred at intake. And while Plaintiff's

allegations are thin, the Court considers them in light of Defendant's treatment of those

allegations and Defendant's response to the Amended Complaint, and in that light, the Court

finds they sufficient. First, Defendant has never challenged Plaintiff's Failure to Separate claim

on the basis of failure to exhaust. The Failure to Separate claim is necessarily intertwined with

Plaintiff's intake process because Plaintiff entered USP Florence on June 1, 2018, and the attack

occurred the very next day, on June 2, 2018. (Doc. No. 67-3 at 48.) Second, in the Declaration of

Cassandra Grow, attached to the Motion to Dismiss, Ms. Grow avers that along with Plaintiff's

Failure to Prevent and Failure to Intervene claims, "the Bureau [also] investigated whether

Plaintiff had a separation assignment from his attacker and whether staff had prior knowledge of

a threat to Plaintiff." (Doc. No. 67-3, Decl. Cassandra Grow ¶¶ 16, 17.) This "prior knowledge,"

could only be relevant on intake, or shortly thereafter, given the limited time lapse between the

intake and the attack.

Thus, in making its failure to exhaust argument, Defendant is asking the Court to split

hairs. On the one hand, Defendant appears to concede that the administrative claim was

sufficient to give BOP notice that Plaintiff's intake may have been mishandled insofar as it

concerns a separation order, on the other hand, Defendant argues that any issues other parts of

Plaintiff's intake process—his interview, BOP's review of his files beyond a separation order,

etc.—have not been properly noticed. The Court declines to take such a wooden approach to Plaintiff's administrative claim. *See Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000) ("This court has refused to interpret the notice-of-claim requirement woodenly. We have attempted instead to achieve a balance, recognizing that persons wishing to hold the federal sovereign liable in tort must satisfy the strictures of the law, but also recognizing that Congress did not intend to shield the federal fisc behind an impenetrable thicket of lawyerly technicalities."). Said another way, the administrative claim provided BOP with notice that Plaintiff's intake may have been mishandled, and, BOP has not acted as if they lacked such notice. *See Lopez*, 823 F.3d at 977 (stating that the central purpose of pre-suit administrative claim requirements is "to give the agency notice of the claim, an opportunity to investigate, and a chance to settle the claim prior to litigation").

For these reasons, Defendant's Motion to Dismiss Plaintiff's Failure to Properly Interview Claim is denied.[5]

## III.   The Sufficiency of Allegations in Support of the 'Failure to Prevent' Claim

Defendant next argues that Plaintiff fails to state a claim based on BOP's alleged failure to prevent Geshik from bringing a metal blade into the recreation yard. (Doc. No. 67 at 16–18.) Defendant contends that the allegations supporting this claim are entirely speculative and conclusory. (*Id.*) Judge Wang declined to dismiss this claim in Plaintiff's original complaint.

In the Amended Complaint, Plaintiff alleges that to enter the yard on June 2, 2018, he passed through a metal detector staffed by two guards. (Doc. No. 60 ¶ 35.) Plaintiff further

---

[5] The Motion does not challenge the sufficiency of this claim on Rule 12(b)(6) grounds. The Court declines to address this issue *sua sponte*.

alleges that "*each* inmate point of entry" to the yard has a security checkpoint, including a metal

detector, staffed by guards. (*Id.* ¶ 32 (emphasis added).) Though he does not claim to have seen

Geshik enter the yard, Plaintiff contends that, following the attack, he watched Geshik pass

through a metal detector and return inside the prison while still carrying the 5–6 inch knife. (*Id.* ¶

79.) Plaintiff contends that the guards were at least negligent in allowing the knife to enter the

yard, as the metal detectors "could detect staples" and have been known to pick up "pens,

paperclips," and metal left in the body by medical procedures. (*Id.* ¶¶ 71, 73, 74.) Plaintiff does

not claim to know when the knife was brought to the yard or who carried the knife to the yard.

(*Id.* ¶ 78.)

The Court agrees with Judge Wang's decision that Plaintiff's allegations are sufficient to

survive a Rule 12(b)(6) challenge. (*See* Doc. No. 53 at 23–25.) The Amended Complaint

plausibly demonstrates that Geshik carried the metal knife through metal detectors and past

guards who were allegedly negligent in failing to stop him. Plaintiff alleges that (1) all inmates

entering the yard were required to pass through manned metal detectors; (2) the metal detectors

were powerful enough to detect "staples," "pens[, and] paperclips"; (3) Geshik attacked him in

the yard with a large metal knife; and (4) Plaintiff observed Geshik return inside the prison,

passing through a metal detector to do so, while still carrying the weapon. (Doc. No. 60 ¶¶ 32,

71, 73, 74, 78, 79.) These allegations, taken as true, are sufficient to plausibly establish that BOP

employees breached a duty owed to Plaintiff, causing him to be attacked. Accordingly, the Court

declines to dismiss this claim.[6]

---

[6] In his Amended Complaint and Response, Plaintiff repeatedly refers to the doctrine of *res ipsa
loquitur* for the proposition that a metal knife entering the yard could not have occurred in the
absence of negligence by BOP employees. (*See, e.g.*, Doc. No. 60 ¶ 71); *Luciano v. United*

**IV.     The Sufficiency of Allegations in Support of the 'Failure to Intervene' Claim**

Finally, Defendant contends that Plaintiff fails to state a claim based on BOP's alleged

failure to timely intervene in the attack. (Doc. No. 67 at 18–20.) Defendant argues that "Plaintiff

has included no specific, non-conclusory allegations from which an inference can be drawn that

officers knew or should have known of an opportunity to intervene in the attack." (*Id.* at 20.)

Judge Wang declined to dismiss this claim, too.

In the Amended Complaint, Plaintiff generally alleges (1) that the attack should have

been observable from many locations around the yard (*see* Doc. No. 60 ¶ 32 (noting that guards

man the metal detectors around the yard); ¶ 36 (noting the guard tower); ¶ 37 (noting the

"circular view" of the yard from windows inside the prison; ¶ 104 (noting the surveillance

cameras)); (2) that the fight "lasted several minutes"; and (3) that as he staggered toward the

prison, multiple officers, who were "not in a hurry," emerged from inside the prison, with one

stating that he had observed at least some part of the attack. (*Id.* ¶¶ 50, 51, 106.)

---

*States*, No. 15-CV-02792-NYW, 2017 WL 6729620, at *5 (D. Colo. Dec. 29, 2017) ("The
doctrine of res ipsa loquitur applies 'when it is judicially determined that a particular
unexplained occurrence creates a prima facie case of negligence without proof of specific
misconduct.'" (quoting *Williams v. Boyle*, 72 P.3d 392, 397–98 (Colo. App. 2003)). "For *res ipsa
loquitur* to apply, the plaintiff must establish that it is more probable than not that: (1) the event
is of the kind that ordinarily does not occur in the absence of negligence; (2) responsible causes
other than the defendant's negligence are sufficiently eliminated; and (3) the presumed
negligence is within the scope of the defendant's duty to the plaintiff." *Chapman v. Harner*, 339
P.3d 519, 521 (Colo. 2014) (internal quotation omitted)). Plaintiff has not established a *res ipsa
loquitur* theory. Most significantly, at this point, the Court does not believe Plaintiff has
"sufficiently eliminated" other potentially "responsible causes other than the defendant's
negligence." *Chapman*, 339 P.3d at 521. Indeed, Defendant points to several other cases in
which courts discussed methods by which a knife could end up in the recreation yard without the
negligence of prison officials. (Doc. No. 67 at 17 n. 8.) The Court does not rule out the
possibility that Plaintiff could establish a *res ipsa loquitur* theory down the road, but he has not
to this point. The Court denies the Motion to Dismiss this claim applying standard negligence
theory.

As noted by Judge Wang, "in the excessive force context under 42 U.S.C. § 1983, the Tenth Circuit has held that to hold a defendant liable based on a failure to intervene, the defendant 'must have had a realistic opportunity to intervene to prevent harm from occurring'" (Doc. No. 53 at 26 (quoting *Savannah v. Collins*, 547 F. App'x 874, 876 (10th Cir. 2013)).) The analysis turns on the length of the attack and the position one is in to observe and intervene in the attack. *See, e.g.*, *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2nd Cir. 1988) (holding that defendant had no duty to intervene when "three blows were struck in such rapid succession that [the defendant] had no realistic opportunity to attempt to prevent them"). However, "[t]he determination of whether a defendant had a realistic opportunity to intervene … is typically an issue of fact which cannot be resolved on a motion to dismiss." (Doc. No. 53 at 27 (citing *Rustgi v. Reams*, 536 F. Supp. 3d 802, 816 (D. Colo. 2021); *Hogan v. Okla. Dep't of Corr.*, 24 F. App'x 984, 985 (10th Cir. 2002)).)

Here, Plaintiff has alleged that he was violently attacked for several minutes in a location observable from several locations by BOP employees. Indeed, Plaintiff alleges that one BOP employee told him he saw some part of the attack. Based on these allegations, and after reviewing analogous Section 1983 excessive force cases, it is at least plausible that BOP employees, while owing a duty of care to Plaintiff, breached that duty by failing to intervene in the attack causing Plaintiff to suffer additional injuries. Accordingly, the Court declines to dismiss this claim.

## V.      Plaintiff's Motion for Appointment of Counsel

On April 19, 2022, Judge Wang denied Plaintiff's original motion for an appointment of counsel without prejudice. (Doc. No. 46.) Plaintiff now renews his request. (Doc. No. 59.)

The determination as to whether to appoint counsel in a civil case is left to the sound discretion of the district court. *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). The court must "give careful consideration to all the circumstances with particular emphasis upon certain factors that are highly relevant to a request for counsel." *Id.* (quoting *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir. 1985)). Those factors include: "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Id.* (quoting *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991)). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004) (quoting *McCarthy*, 753 F.2d at 838). "Only in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." *Id.* (quoting *McCarthy*, 753 F.2d at 839).

Pursuant to the Local Rules of Practice of the United States District Court for the District of Colorado-Attorney, the following unrepresented parties are eligible for the appointment of *pro bono* counsel: (1) a party who has been granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915; (2) an unrepresented prisoner; and (3) a non-prisoner, unrepresented party who demonstrates limited financial means. D.C.COLO.LAttyR 15(e). In addition to eligibility, the court applies the following factors and considerations to evaluate a motion for the appointment of counsel in a civil case: (1) the nature and complexity of the action; (2) the potential merit of the *pro se* party's claims; (3) the demonstrated inability of the unrepresented party to retain an attorney by other means; and (4) the degree to which the interests of justice will be served by the

appointment of counsel, including the benefit the court may derive from the assistance of the appointed counsel. D.C.COLO.LAttyR 15(f)(1)(B).

In the Motion for Counsel, Plaintiff states that he is concerned about his ability to explain his case clearly. (Doc. No. 59 at 3 ("[T]he Court …[has] struggled to understand the pleadings of [Plaintiff] … because [Plaintiff] could not explain the issue[s] in a clear manner.").) Plaintiff also contends that the "programming" and classes he attends "consume a large portion" of his time, making it difficult for him to push this case forward. (*Id.* at 4.) Finally, Plaintiff contends that his access to necessary technology and information is limited due to certain Covid-19 restrictions and because USP Terre Haute only has four working computers for inmates to use. (*Id.*) Plaintiff acknowledges that he has received help in prosecuting his case from a "[l]aw [a]ssistant" but maintains that formal appointment of counsel is necessary. (*Id.* at 7.)

Upon review of the Motion for Counsel, the docket, and the D.C.COLO.LAttyR 15(f) factors, the Court concludes that appointment of counsel is not warranted at this time. First, the fact that Plaintiff is incarcerated, standing alone, is not grounds for appointing *pro bono counsel. See Shayesteh v. Raty*, 2007 WL 2317435, at *1 (D. Utah Aug. 7, 2007) (declining to appoint counsel where the plaintiff "generally allege[d] that his litigations [were] being hindered by his incarceration" but where he did not "allege specific facts showing any actual prejudice"). Likewise, continuing obstacles posed by Covid-19 are not unique or sufficient to demonstrate the need for an appointment. *See Weeks v. Barkman*, No. 20-CV-00544-PAB-NYW, 2020 WL 7385711, at *2 (D. Colo. Dec. 16, 2020) (stating that challenges caused by Covid-19 "are, unfortunately, not unique" and noting that a plaintiff must articulate "specific factors" warranting an appointment). Further, that the appointment of counsel may assist a plaintiff in prosecuting his

case, conducting discovery, or otherwise persuading the Court is not, in and of itself, grounds for an appointment. *See Rucks*, 57 F.3d at 979 ("While we do not quarrel with [Plaintiff's] assertion that having counsel appointed would have assisted him in presenting his strongest possible case, the same could be said in any case."). Finally, the Court does not believe this action involves uniquely complex issues warranting appointment at this time. *See Toevs v. Reid*, 68 F.3d 903, 916 (10th Cir. 2012) (explaining appointment of counsel is appropriate in "extreme case[s] where the lack of counsel results in fundamental unfairness"). And the case is still in the early stages.

Accordingly, the Court denies the Motion for Counsel. This denial is without prejudice, and Plaintiff may move for the appointment of counsel again at a later date, particularly if the case appears likely to go to trial. *See Hill v. SER Jobs For Progress National, Inc.*, No. 1:19-cv-01851-MDB, slip op. (D. Colo. Oct. 3, 2022).

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that

1. Defendant's Motion to Dismiss (Doc. No. 67) is **DENIED**;

    a. Defendant **SHALL ANSWER** Plaintiff's Amended Complaint within 14 days of this Order.

2. Plaintiff's Motion for Appointment of Counsel From Pro Bono List for Reasons of Extraordinary Circumstances (Doc. No. 59) is **DENIED *without prejudice***.

3. A status conference shall be set for **May 8, 2023, at 1:00 P.M.**

    a.   The parties should be prepared to discuss limited jurisdictional discovery into the possible existence of a separation order directing the separation of Plaintiff and Geshik at the time of the attack.

    b.   The Status Conference shall be conducted telephonically. At the appointed time, each participant should call 571-353-2301, and then enter ID # 617286044.

4.   The Clerk is directed to send copy of this Order, marked as legal mail, to:

David J. Martin, #05051-051
Terre Haute - Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808

and

Case Manager for David J. Martin, #05051-051
Terre Haute - Federal Correctional Institution
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, IN 47808

    Dated this 31st day of March, 2023.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge